**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| CHARLENE LONG,<br>　　　　　Appellant, | DOCKET NUMBER<br>DC-844E-20-0243-I-1 |
| 　　　v. | |
| OFFICE OF PERSONNEL<br>　MANAGEMENT,<br>　　　　　Agency. | DATE:  February 19, 2025 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Charlene Long, Buford, Georgia, pro se.

Shawna Wheatley, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Henry J. Kerner, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which affirmed the reconsideration decision of the Office of Personnel Management (OPM) that denied her application for disability retirement benefits under the Federal Employees Retirement System (FERS).  For the reasons discussed below,

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

we GRANT the appellant's petition for review and REVERSE the initial decision. OPM's reconsideration decision is NOT SUSTAINED.

## BACKGROUND

The appellant was employed as a GS-12 Program Analyst with the Department of the Navy in Norfolk, Virginia. Initial Appeal File (IAF), Tab 7 at 97. On January 18, 2019, she submitted an application for disability retirement benefits under FERS based on cervical spinal stenosis with myelopathy, arthritis, muscle spasms, and obstructive sleep apnea. *Id.* at 54-55. In her Statement of Disability supporting her application, she stated that she became disabled from her position following a spinal surgery on July 19, 2018. *Id.* at 53-54. She explained that the July 19, 2018 surgery was her third spinal surgery to treat her cervical spinal stenosis with myelopathy but that afterwards she continued to experience symptoms such as numbness, tingling, pain, and loss of balance. *Id.* at 54. She also explained that her arthritis and muscle spasms affected her ability to sit, stand, walk, and bend, and that she was under treatment from pain management and orthopedic doctors. *Id.* To support her claims, she submitted medical evidence, including two letters from her medical providers, both of whom recommended continued telework as an accommodation following her July 19, 2018 surgery, and a Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act), in which her physician verified her conditions and treatments and their effects on her ability to work. *Id.* at 58-59, 71-74. She explained in her Statement of Disability that, although the agency initially permitted her to telework, it revoked her full-time telework accommodation in October 2018 because she was not able to perform the same team lead duties while teleworking that she would perform in an office. *Id.* at 54.

On July 1, 2019, OPM denied the appellant's application for disability retirement benefits, and the appellant requested reconsideration, asserting that her attendance was unacceptable due to the agency's revocation of the full-time

telework accommodation and that, although she had intended to return to work following her July 2018 surgery, her condition had worsened. *Id.* at 11-50. She also explained that the agency offered to provide her with an ergonomic keyboard to address the pain in her hands but that she declined the offer because it did not address all of her conditions. *Id.* at 18. She also referenced a new diagnosis of a pituitary tumor. *Id.* In support of these assertions, the appellant submitted additional evidence from her medical providers, including a June 18, 2019 evaluation report following a fall, wherein the treating physician noted that the appellant "likely has some degree of permanent myelopathy" and that "further surgery will not change this." *Id.* at 45. The appellant also submitted a July 25, 2019 write-up from a medical provider regarding her "chronic musculoskeletal pain," wherein the provider explained that the appellant suffers pain 75% of the time that is "burning," "throbbing," "shooting," and "sharp." *Id.* at 20. The appellant also submitted other medical documentation showing pituitary macroadenoma, which caused her to experience balance problems, headaches, and blurred vision. *Id.* at 34-40.

On November 22, 2019, OPM issued a reconsideration decision affirming its initial decision. *Id.* at 6-9. Specifically, it found that the appellant failed to establish (1) that her attendance deficiency was the result of a disabling medical condition, (2) that she suffered from a disabling medical condition that rendered her unable to provide useful and efficient service or unable to perform the essential duties of her position, and (3) that her employing agency was unable to reasonably accommodate her. *Id.* As such, OPM concluded that the appellant

failed to meet the requisite criteria for disability retirement benefits under FERS.[2] *Id.*

The appellant appealed OPM's reconsideration decision to the Board. IAF, Tab 1. After holding a telephonic hearing, the administrative judge issued an initial decision. IAF, Tab 17-1, Hearing Recording (HR), Tab 18, Initial Decision (ID). Following a discussion of the appellant's medical evidence and the hearing testimony, the administrative judge found that the appellant did not establish that there was a deficiency in her performance, conduct, or attendance caused by her medical conditions or that her medical conditions were incompatible with useful and efficient service or retention in her position. ID at 17-20. The administrative judge further found that the appellant did not show that her medical conditions could not be managed or mitigated with medication or other forms of treatment or that her medical conditions would be disabling for more than a year beyond the date of her disability retirement application. ID at 21. Finally, the administrative judge found that the appellant failed to establish that accommodation of her medical conditions would be unreasonable. ID at 22. Ultimately, she found that the appellant failed to establish the criteria for obtaining disability retirement benefits, and she affirmed OPM's reconsideration decision. *Id.* at 22-23.

The appellant has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. She generally requests review of the initial decision and focuses her arguments on her attendance record, her job performance, her leave usage, her former employing agency's accommodation

---

[2] In its reconsideration decision, OPM also noted that, although "not a factor in deciding the outcome of [the appellant's] FERS claim," its records indicate that she was also denied Social Security benefits, which, it asserted, "further supports OPM's findings that [the appellant is] not disabled." IAF, Tab 7 at 8. We acknowledge this denial. IAF, Tab 7 at 75. Nonetheless, the Board has found that such determinations are not binding on its decision, and we conclude that the medical evidence supporting a finding that the appellant is entitled to a disability retirement under FERS outweighs the Social Security Administration's denial of the appellant's claim. *See Doe v. Office of Personnel Management*, 109 M.S.P.R. 86, ¶ 22 (2008).

efforts, her continuing health issues, and problems created by her physician's statements and actions. *Id*. at 1-2. The agency has not responded to the appellant's petition for review, and it is, thus, unopposed.

### DISCUSSION OF ARGUMENTS ON REVIEW

In an appeal from an OPM decision denying a voluntary disability retirement application, the appellant bears the burden of proof by preponderant evidence. *Christopherson v. Office of Personnel Management*, 119 M.S.P.R. 635, ¶ 6 (2013); 5 C.F.R. § 1201.56(b)(2)(ii). To be eligible for disability retirement benefits under FERS, an individual must show the following: (1) she completed at least 18 months of creditable civilian service; (2) while employed in a position subject to FERS, she became disabled because of a medical condition resulting in a deficiency in performance, conduct, or attendance, or if there is no such deficiency, the disabling medical condition must be incompatible with either useful and efficient service or retention in the position; (3) the disabling medical condition is expected to continue for at least 1 year from the date the disability retirement benefits application is filed; (4) accommodation of the disabling medical condition in the position held must be unreasonable; and (5) she did not decline a reasonable offer of reassignment to a vacant position. *Christopherson*, 119 M.S.P.R. 635, ¶ 6; *see* 5 U.S.C. § 8451(a).

In the initial decision, the administrative judge found that the appellant established that she completed at least 18 months of creditable civilian service, but, as noted, agreed with OPM that she failed to establish any of the other criteria. ID at 17-22. Based on our review of the record, we disagree and find that the appellant established all of the criteria necessary to be granted disability retirement benefits. Because this appeal ultimately hinges on whether the appellant's medical conditions resulted in a deficiency in performance, conduct, or attendance, or if there is no such deficiency, whether the disabling medical conditions are incompatible with either useful and efficient service or retention in the position, we begin our analysis there.

<u>The appellant established that her medical condition is incompatible with useful and efficient service.</u>

An appellant may meet the requirement that she "be unable, because of disease or injury, to render useful and efficient service in the employee's position" by showing either: (1) that the medical condition caused a deficiency in performance, attendance, or conduct, as evidenced by the effect of her medical condition on her ability to perform specific work requirements, or her medical condition prevented her from being regular in attendance, or caused her to act inappropriately; or (2) that the medical condition is incompatible with useful and efficient service or retention in the position by demonstrating that her medical condition is inconsistent with working in general, in a particular line of work, or in a particular type of work setting. *Christopherson*, 119 M.S.P.R. 635, ¶ 6; *see* 5 U.S.C. § 8451(a)(2)(C).

In its reconsideration decision, OPM reiterated its initial analysis of the appellant's disability retirement application. IAF, Tab 7 at 6-7. It also considered several pieces of medical evidence submitted with the appellant's request for reconsideration, including summaries of appointments on June 18, 2019, July 3, 2019, and July 25, 2019, from the appellant's physician regarding her spinal condition and related pain. *Id.* at 7-8. It also considered an MRI and pre-operation evaluation from June 25, 2019 and August 8, 2019, respectively, relating to the appellant's pituitary macroadenoma. *Id.* at 8. OPM concluded that none of this medical evidence established that the appellant suffered from a "disabling medical condition that has rendered [her] unable to perform the essential duties of [her] position and that has rendered [her] incompatible with useful and efficient service." *Id.* at 7-8. In affirming OPM's reconsideration decision, the administrative judge acknowledged the appellant's arguments that her conditions made her unable to work but similarly concluded that the medical documentation "does not reflect an inability to work." ID at 20.

Both OPM and the administrative judge's determinations are based primarily on a conclusion that there was a lack of medical evidence showing that the appellant is unable to work. ID at 17-20; IAF, Tab 7 at 6-8. We disagree with this assessment of the medical evidence. As noted, the appellant included in her disability retirement application to OPM an October 10, 2018 form entitled "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)" (FMLA).[3] IAF, Tab 7 at 71-74. In this form, the appellant's medical provider summarized the appellant's essential job functions and concluded that the appellant was unable to perform all of the functions of her position due to her medical conditions. *Id*. at 71-72.

However, even if the October 10, 2018 FMLA form is insufficient medical evidence to meet the appellant's burden in this respect, the Board made clear in *Henderson v. Office of Personnel Management*, 117 M.S.P.R. 313 (2012), that medical evidence showing how a medical condition affects specific job duties or indicating that an appellant cannot meet the requirements of her position is not required to prove entitlement to retirement benefits. 117 M.S.P.R. 313, ¶¶ 16, 18 (finding that there is no general rule that medical evidence in disability retirement cases must unambiguously and without contradiction show how a medical condition affects specific job duties or indicate that the employee cannot meet the requirements of her position in order to establish entitlement to disability retirement benefits and that any such requirement imposes a higher burden of proof which is not authorized by law or regulation). Rather, the Board will consider all pertinent evidence in determining an appellant's entitlement to disability retirement: objective clinical findings, diagnoses and medical opinions, subjective evidence of pain and disability, and evidence relating to the effect of the applicant's condition on her ability to perform the duties of her position. *Id.*, ¶ 19. Nothing in the law mandates that a single provider tie all of this evidence

---

[3] This form appears to have been included in the record due to the appellant's formal request for additional leave under FMLA. IAF, Tab 7 at 71.

together. *Id.* For example, if the medical provider provides clinical findings, a diagnosis, and a description of how the medical condition affects the appellant's activities in general terms, the Board could consider that evidence, together with the appellant's subjective account of how the condition has affected her ability to do her job and her daily life, testimony or statements from supervisors, coworkers, family members, and friends, and the appellant's position description. *Id.* From that, the Board could conclude that the medical condition caused deficiencies in the employee's performance, conduct, or attendance, or that the medical condition is incompatible with useful and efficient service in her position, either because the appellant is unable to perform critical elements of her position, or because she cannot work any job in a particular line of work, or in a particular type of work setting. *Id.*

Here, the appellant testified that she became disabled and unable to work following her third spinal surgery on July 19, 2018. HR (testimony of the appellant); IAF, Tab 7 at 18. She further testified that, following that surgery, the preexisting pain in her neck and hands increased, which, she explained, her medical provider informed her could happen as a result of nerve damage due to the surgeries. HR (testimony of the appellant); IAF, Tab 7 at 17. She stated that this pain significantly impacted her ability to sit for long periods of time, which is the nature of the physical demands of her position as described in the position description. HR (testimony of the appellant); IAF, Tab 7 at 54, 70. She also stated that the pain in her hands affected her ability to type and complete data entry, which is a primary component of her job. HR (testimony of the appellant); IAF, Tab 7 at 54, 71. Additionally, in both the appellant's January 18, 2019 Statement of Disability and during her hearing testimony, she explained that the increased pain from her related medical conditions required her to take several

medications, which affected her mobility, alertness, reasoning, and concentration.[4] IAF, Tab 7 at 54; HR (testimony of the appellant).

The record also includes a January 23, 2019 statement from the appellant's supervisor, wherein the supervisor stated that the appellant "is a Team Lead and due to medical issues could not continue performing Team Lead duties." IAF, Tab 7 at 57. The supervisor further explained that another analyst was promoted to the appellant's position. *Id.* Additionally, the appellant testified at the hearing that it was her supervisor and a human resources official who had suggested that she apply for disability retirement benefits in the first instance. HR (testimony of the appellant). More generally, the appellant also testified that, due to her medical conditions, there were no positions in the Federal Government or elsewhere for which she would be suitable due to her hand pain, back pain, spinal pain, her general issues with sitting and standing, and the side effects experienced as a result of her medication. *Id.*

Although we acknowledge that the medical evidence of record providing a direct connection between the appellant's medical condition and an inability to perform the duties of her position appears to be limited to the October 10, 2018 FMLA form completed by the appellant's physician, IAF, Tab 7 at 71-74, the medical evidence of record nonetheless establishes the diagnoses of the conditions the appellant described, generally describes the symptoms associated

---

[4] The appellant further testified that the side effects of the medications she took for pain significantly impacted her ability to commute, which was a mandatory aspect of her job following the agency's revocation of her full-time telework accommodation. HR (testimony of the appellant). However, the Board has found that an inability to commute to work is irrelevant to a disability retirement determination. *See Livengood v. Office of Personnel Management*, 41 M.S.P.R. 568, 574 (1989) (finding that an appellant's difficulties in commuting to work because of her pain was not a relevant consideration in a disability retirement determination under the Civil Service Retirement System); *Jolliffe v. Office of Personnel Management*, 23 M.S.P.R. 188, 191 (1984) (same), *aff'd*, 785 F.2d 320 (Fed. Cir. 1985) (Table). Although these cases involve applications under the Civil Service Retirement System, we discern no reason why the principle is not applicable to applications, such as the one in this case, filed under FERS.

therewith, and supports the need for the medications she was taking and corroborates the effects of those medications, *id.* at 20-25, 34-37, 40-45, 58-60. We find that her hearing testimony, which is uncontradicted,[5] and other record evidence, such as the supervisor's statement, enable us to deduce that the appellant's medical conditions are incompatible with useful and efficient service.[6] *See Henderson*, 117 M.S.P.R. 313, ¶ 19; *see also Angel v. Office of Personnel Management*, 122 M.S.P.R. 424, ¶ 12 (2015) (explaining that testimony or written statements concerning symptoms that are submitted by the appellant may be entitled to great weight on the matter of disability, especially when such evidence is uncontradicted in the record); *Cole v. Office of Personnel Management*, 88 M.S.P.R. 54, ¶ 4 (2001) (stating that, in determining the ultimate fact of disability, the appellant's own testimony of subjective pain and inability to work must be seriously considered, particularly where it is supported by competent medical evidence); *Easterwood v. Office of Personnel Management*, 48 M.S.P.R. 125, 129 (1991) (stating that when an appellant's subjective reports of pain and disability are supported by competent medical evidence, they cannot be dismissed as solely self-serving), *aff'd*, 950 F.2d 731 (Fed. Cir. 1991) (Table).

---

[5] As noted in the initial decision, the OPM representative did not appear for the prehearing conference or the telephonic hearing. ID at 1 n.1. As such, the appellant's testimony is uncontradicted.

[6] Although the administrative judge credited the appellant's testimony regarding the pain she experiences, she found the aspect of the appellant's testimony regarding her inability to work "less compelling." ID at 20 (citing *Hillen v. Department of the Army*, 35 M.S.P.R. 453 (1987)). The administrative judge did not explain this finding. Moreover, credibility findings made in conjunction with a telephonic hearing are generally not entitled to the degree of deference usually afforded to such findings when the hearing is held either in person or by video conference. *Rapp v. Office of Personnel Management*, 108 M.S.P.R. 674, ¶ 13 n.5 (2008) (finding that the Board need not defer to an administrative judge's demeanor-based credibility findings when a hearing is conducted by telephone); *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (stating that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing).

Based on the foregoing, we find that the appellant established by preponderant evidence that her medical conditions are incompatible with useful and efficient service. *See Christopherson*, 119 M.S.P.R. 635, ¶ 6 (2013); 5 C.F.R. §§ 1201.4(q), 1201.56(b)(2)(ii).[7]

The appellant established that her medical condition was expected to continue for at least 1 year from the date she applied for disability retirement benefits.

Although OPM's reconsideration decision did not explicitly discuss whether the appellant established that her medical condition was expected to continue for at least 1 year from the date she applied for disability retirement benefits, its July 1, 2019 initial decision concluded that "[t]here was insufficient medical evidence submitted to indicate that [her] conditions are disabling and expected to continue to be disabling for at least one [] year from [her] date of application." IAF, Tab 7 at 6-9, 47. OPM based this finding on the appellant's medical evidence stating that, following the appellant's July 19, 2018 spinal surgery, she would be unable to work for 6 months, and subsequent medical evidence estimating that her recovery from surgery would last 6 months. *Id*. at 47, 58, 72. Similarly, in the initial decision, the administrative judge concluded that the appellant's medical evidence "does not indicate that [her] conditions created any limitations or restrictions to her ability to work" beyond 6 months. ID at 21. Although the administrative judge considered the appellant's

---

[7] While we find that the appellant established that her medical conditions are incompatible with useful and efficient service or retention in her position, we would also alternatively find that the appellant established that her medical conditions caused a deficiency in her performance, conduct, or attendance. *See Christopherson*, 119 M.S.P.R. 635, ¶ 6. Indeed, the record establishes that the appellant's physician recommended full-time telework, which the agency initially granted and then subsequently revoked, and that, because the appellant was unable to commute to her office due to the side effects of the various prescription medications she was taking to treat her conditions, she no longer reported to work, resulting in a deficiency in attendance. IAF, Tab 7 at 17, 54, 57-58; HR (testimony of the appellant). Additionally, the appellant's supervisor stated that the appellant's attendance was unacceptable. IAF, Tab 7 at 57. Thus, we alternatively find that the appellant's medical conditions caused a deficiency in her attendance.

"subjective statement" that her physician stated that the appellant would always require medical attention, she found that those claims "standing alone" are insufficient to meet the preponderant evidence standard. ID at 21.

We do not agree that the appellant's statements regarding the duration of her condition stand alone without other evidentiary support. In a June 18, 2019 summary of an appointment with her physician, the physician noted that, nearly a year later, the appellant still experiences "residual symptoms" following her July 19, 2018 spinal surgery and that she has "some degree of permanent myelopathy" that "further surgery will not change." IAF, Tab 7 at 45. This medical evidence, in conjunction with the appellant's testimony that she would always require medical attention for her cervical spinal stenosis with myelopathy, establishes by preponderant evidence that her medical conditions would continue for more than 1 year after the date of her disability retirement application.

The appellant established that accommodation of her medical condition was unreasonable.

As noted, to be entitled to disability retirement benefits, an appellant must also prove that accommodation of the disabling medical condition must be unreasonable. *See Christopherson*, 119 M.S.P.R. 635, ¶ 6. In its reconsideration decision, OPM discussed the appellant's initial telework accommodation and considered that her medical providers requested a "sit to stand" desk, which the agency provided. IAF, Tab 7 at 7. The agency also provided an ergonomic chair as an accommodation. *Id.* OPM ultimately concluded that there was no evidence showing that these were not reasonable accommodations, that the agency was unable to accommodate the appellant, or that the accommodations were not successful in allowing her to continue to successfully perform the essential duties of her position. *Id.* In the initial decision, the administrative judge noted that the agency had also offered an ergonomic keyboard in January 2019, but that the appellant declined it. ID at 22; HR (testimony of the appellant); IAF, Tab 7 at 18. Regarding the agency's revocation of the full-time telework accommodation, the

administrative judge reasoned that the appellant did not establish "how working from home would effectively accommodate her conditions." ID at 22. Accordingly, the administrative judge agreed with OPM and found that the appellant failed to establish that the agency failed to accommodate her or that accommodation of her conditions would be unreasonable. *Id.*

Regarding the ergonomic chair and "sit to stand" desk, the appellant clarified that those accommodations were provided before her July 19, 2018 surgery and that, following that surgery, her pain increased such that the equipment was no longer effective. IAF, Tab 15 at 10; HR (testimony of the appellant). The appellant explained that the ineffectiveness of the ergonomic equipment is what led her physician to recommend full-time telework. HR (testimony of the appellant). It is undisputed that, although the agency initially accommodated the appellant's full-time telework request, it revoked that accommodation after it determined that the appellant was unable to perform her team lead duties from an alternative location away from her office. IAF, Tab 15 at 9; HR (testimony of the appellant). In essence then, the telework accommodation was a temporary one, and the Board has held that temporary accommodation is not sufficient accommodation of a disability. *See Gometz v. Office of Personnel Management*, 69 M.S.P.R. 115, 123 (1995). Regarding the ergonomic keyboard discussed by the administrative judge, the appellant testified at the hearing that her physicians did not recommend such equipment as an accommodation, and she never requested it from the agency because it would not have been helpful in addressing her conditions. HR (testimony of the appellant). The appellant's employing agency acknowledged that the appellant declined this accommodation "due to her medical complications." IAF, Tab 7 at 61-62. The appellant's testimony regarding the feasibility and reasonableness of these accommodations is uncontradicted in the record. Based on the foregoing, we find that the appellant established by preponderant evidence that accommodation of her medical condition would have been unreasonable.

<u>The appellant proved that she did not decline a reasonable offer of reassignment to a vacant position.</u>

Finally, the appellant is also required to show that she must not have declined an offer of reassignment to a vacant position. *See Christopherson*, 119 M.S.P.R. 635, ¶ 6. The agency confirmed in its certification of reassignment and accommodation efforts that the appellant was not reassigned to a vacant position, and the appellant testified at the hearing that she was never offered a possible reassignment. IAF, Tab 7 at 61-62; HR (testimony of the appellant). The appellant's testimony that she was never offered a reassignment is uncontradicted in the record. Accordingly, we find that the appellant met her burden in this regard.

In sum, we find that the appellant proved by preponderant evidence that she completed at least 18 months of creditable civilian service; that she suffered from a disabling medical condition that is incompatible with useful and efficient service or retention in the position; that the disabling medical condition was expected to last at least 1 year from the date of her disability retirement application; that accommodation of her medical condition is unreasonable; and that she did not decline a reasonable offer of reassignment to a vacant position. *See Christopherson*, 119 M.S.P.R. 635, ¶ 6. Based on this showing, we find that the appellant was entitled to disability retirement benefits from the date of her application on December 19, 2018 through November 30, 2019, the date before which her regular FERS retirement annuity commenced. IAF, Tab 7 at 87.

## ORDER

We ORDER OPM to grant the appellant's application for disability retirement for the period of December 19, 2018, to November 30, 2019. OPM must complete this action no later than 20 days after the date of this decision.

We also ORDER OPM to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. We ORDER the appellant to provide all necessary

information OPM requests to help it carry out the Board's Order. The appellant, if not notified, should ask OPM about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after OPM tells the appellant it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that OPM did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes OPM has not fully carried out the Board's Order, and should include the dates and results of any communications with OPM. *See* 5 C.F.R. § 1201.182(a).

This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[8]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>.** This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9] The court of appeals must <u>receive</u> your petition for

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of

review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

Washington, D.C.

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board